**CHAS. KURZ CO.**

v.

**Alfonso R. LOMBARDI, et al.**

**Civ. A. No. 84–779.**

United States District Court,
Eastern District of Pennsylvania.

July 10, 1984.

A. Robert Degen, Maurice J. Maley, Jr., Krusen, Evans & Byrne, Philadelphia, Pa., for plaintiff.

James C. Schwartzman, Schwartzman & Hepps, Philadelphia, Pa., for defendant Alfonso R. Lombardi.

Daniel B. Pierson and Samuel Lander, Philadelphia, Pa., for defendants Wm. L. and Ruth A. Hoskins and Kali Corp.

William Goldstein, Greenstein, Gorelick, Price, Silverman & Laveson, Philadelphia, Pa., for defendants Ripley's Enterprises, Ltd., Lombardi Investment Associates and Steven Starr.

Joseph M. O'Neill, Deasey, Scanlon & Bender, Ltd., Philadelphia, Pa., for defendants Steven Lombardi and Janet Lombardi.

## OPINION AND ORDER

VANARTSDALEN, District Judge.

Plaintiff's action has its genesis in defendant Alfonso R. Lombardi's (A.R. Lombardi) alleged embezzlement of large sums of money from his former employer spanning a twenty year period. Plaintiff, Chas. Kurz Company (Kurz), filed the present action against a number of defendants, charging certain of them with a violation of the civil penalties' provision of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and charging the remaining defendants with various state statutory and common-law violations. Jurisdiction is predicated upon the RICO statute itself for the federal claims and "the doctrines of pendent and ancillary jurisdiction" for the state law claims. Defendants Kali Corporation (Kali) and William L. and Ruth A. Hoskins (the Hoskins) are charged with having violated state law solely. Defendants Kali and the Hoskins have moved alternatively to dismiss the complaint or for summary judg-

ment. The Rule 12(b)(1) motion to dismiss for lack of jurisdiction will be granted as to the moving defendants.

## FACTS

The following factual background can be gleaned from plaintiff's complaint. A.R. Lombardi commenced employment on or about January 31, 1955 with Kurz. He held various positions in the company, including Vice President and Chief Financial Officer, until his termination on November 15, 1982. During his employment A.R. Lombardi had access to and was responsible for the preparation, supervision and maintenance of the financial books, records and accounts of plaintiff and was responsible for conducting financial operations and bank transactions for and on behalf of plaintiff. During the course of his employment A.R. Lombardi allegedly converted large sums of the company's funds for his own use, and used his position as a company financial officer to cover-up the scheme. Incredible as it may seem, the embezzlement was not uncovered until November 15, 1982 when he admitted to various Kurz officials that he had been converting company funds for a period in excess of twenty years.

According to the complaint, A.R. Lombardi was using the stolen monies to invest, together with his wife Constance M. Lombardi (C. Lombardi), his son Stephen Lombardi (S. Lombardi) and others, in certain business ventures. Several of these ventures involved cabaret-type establishments and music promotion companies. Most, if not all, of the ventures failed.

Following the confession and subsequent resignation of A.R. Lombardi in November, 1982, Kurz conducted an extensive audit to determine the magnitude of the fraud. As is usual in such situations, litigation also shortly followed. Besides the present action, there were two actions instituted in the Court of Common Pleas, Philadelphia County; one criminal and the other civil.[1]

---

**1.** According to news reports, A.R. Lombardi pled guilty to a theft charge in the criminal action and was recently fined $10,000 and sen-

tenced to one and one-half years in jail. Philadelphia Inquirer, May 22, 1984, at 5–B.

Plaintiff's complaint sets forth five separate "causes of action"; the most important of these being the third cause of action, which asserts the only basis of federal jurisdiction. The third cause of action is brought under RICO against defendants A.R. Lombardi, C. Lombardi, S. Lombardi, four corporations, a partnership and an alleged enterprise. The first, second, fourth and fifth causes of action allege claims for common law fraud, trover and conversion; the Pennsylvania RICO statute, 18 Pa. Cons.Stat.Ann. § 911 (Purdon 1973 & Supp. 1983); and the Uniform Fraudulent Conveyance Act (UFCA), Pa.Stat.Ann. tit. 39, §§ 351–363 (Purdon 1954), respectively. Jurisdiction for these purely state law counts is asserted under the doctrine of ancillary and pendent jurisdiction. Complaint, ¶ 1. Moving defendants Kali and the Hoskins are named in the fifth cause of action, under the UFCA, solely.

## DISCUSSION

█ It is axiomatic that a court's first order of business is to determine if it has jurisdiction to entertain an action. This principle is so fundamental that the court may consider jurisdiction at any time by suggestion of the parties or sua sponte. *See* Fed.R.Civ.P. 12(h)(3). The moving defendants have asserted that there is no basis for jurisdiction as to them. I agree.

█ For purposes of the present motion, I will assume, without deciding, that plaintiff has stated a valid RICO claim against the defendants named in Count III. That quickly brings us to the crux of the matter—must or should this court exercise pendent or pendent party [2] jurisdiction over the moving defendants against whom there is no independent basis of federal jurisdiction?

The present motion raises a difficult issue occurring with increasing frequency in the federal courts, whether a plaintiff in federal court pursuant to a valid federal cause of action against one defendant, may append onto that federal cause of action a state law claim against a different defendant as to whom there is no independent basis of federal jurisdiction? As my colleague, Judge Giles, recently noted in a well-written opinion considering this issue, I must "decide whether the doctrine of pendent jurisdiction extends to a 'pendent party.'" [3]

In light of the extensive treatment this issue has received in the case law and commentary, I will focus upon the two seminal Supreme Court opinions.

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court squarely addressed the issue of pendent jurisdiction for the first time since the enactment of the Federal Rules in 1938. In *Gibbs*, the court noted that:

> Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority ...," U.S. Const., Art. III § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before

2. Plaintiff included the term "ancillary" jurisdiction in his complaint. Although this term is not of precise definition, it is not involved in the case at present. *See* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3523, at 68–69 (1975).

3. *Cheltenham Supply Corp. v. Consolidated Rail Corp.*, 541 F.Supp. 1103, 1105 (E.D.Pa.1982). In that opinion Judge Giles set out an excellent definition of "pendent claim" and "pendent party":

> "Pendent claim" refers to a case in which two parties are properly before the court by virtue of a substantial federal claim over which the court has jurisdiction and the same parties are permitted to litigate a state-law claim over which there is no independent basis of federal jurisdiction. On the other hand, the term "pendent party" refers to a case where a party, who has asserted a federal claim against one party over which there is jurisdiction, seeks to join an entirely different party on the basis of a state-law claim over which there is no independent basis of federal jurisdiction.

*Id.* at 1105 n. 3.

the court comprises but one constitutional "case."

*Id.* at 725, 86 S.Ct. at 1138.

The Court went on to state that in order for the federal court to have the *power* to hear the whole case:

(1) The federal claim has to be substantial;

(2) The state and federal claims have to derive from a common nucleus of operative fact; and

(3) The claims have to be such that plaintiff would ordinarily be expected to try them in one proceeding, if considered without regard to their federal or state character. *Id.*

The Court was careful to note that the power need not be exercised in every case and that pendent jurisdiction was "a doctrine of discretion, not of plaintiff's right." *Id.* at 726, 86 S.Ct. at 1139 (footnote omitted). Justification for the doctrine lies in the considerations of judicial economy, convenience and fairness to litigants.

In the other important case regarding pendent jurisdiction the Court held in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), that there was no "pendent party" jurisdiction with respect to a claim brought under sections 1343(3) and 1983. In *Aldinger* the plaintiff had attempted to bring the defendant county into her § 1983 action [4] by arguing that plaintiff had a valid, pendent state claim against the county official against whom the § 1983 action was proper. Plaintiff further contended that because the county was properly a defendant in the pendent state claim, the federal court could and should maintain jurisdiction over the county.

The Court rejected plaintiff's argument, but specifically limited its holding to the facts at hand. The Court's reasoning involved analysis of whether "Congress has addressed itself to the *party* as to whom jurisdiction pendent to the principal claim is sought." 427 U.S. at 16, 96 S.Ct. at 2421. The Court concluded Congress had done so and "by implication declined to extend federal jurisdiction" to the county. *Id.* at 19, 96 S.Ct. at 2422. The Court took care to avoid laying down a sweeping pronouncement, but stated:

Two observations suffice for the disposition of the type of case before us. If the new party sought to be joined is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim. Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

*Id.* at 18, 96 S.Ct. at 2422.

A number of courts have, quite properly, attempted to use the *Aldinger* reasoning in cases involving a claim of pendent party jurisdiction under different jurisdiction-granting statutes than sections 1343 and 1983. *See e.g., Cheltenham Supply,* 541 F.Supp. at 1106. Because the specific factual background of *Aldinger* differs from the present case and the Court explicitly limited the holding to the statutes involved, I do not find *Aldinger* controlling.

The second of the Court's two "observations" in *Aldinger* suggested that "a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." 427 U.S. at 18, 96 S.Ct. at 2422.[5]

---

**4.** For § 1983 purposes the county, at that time, was not considered a "person" against whom an action could be maintained.

**5.** The Court's first observation that "[i]f the new party sought to be joined is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdic-

tion than if parties already before the court are required to litigate a state-law claim," 427 U.S. at 18, 96 S.Ct. at 2422, certainly supports a narrow view of pendent party jurisdiction.

The first part of the second "observation" that "Art. III permits it," seems to have received short shrift by the courts with respect to pendent party jurisdiction. This Art. III concern

Many courts have therefore analyzed jurisdiction-granting statutes in terms of express or implied negation. Because the Supreme Court found an implied negation in *Aldinger* the Court did not articulate what happens when no such express or implied negation by the Congress can be found. It is precisely this situation that the present case raises.

■ Neither the jurisdiction-granting sections of RICO nor the legislative history exhibit any manifestation of express or implied congressional intent to grant pendent party jurisdiction. The statute provides in relevant part:

The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders....

....

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court....

18 U.S.C. § 1964(a)&(c).

Who can be sued under RICO is of course circumscribed by the substantive portions of the statute dealing with prohibited activity. Plaintiff's RICO cause of action is asserted under section 1962(a), which provides in relevant part:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enter-

prise which is engaged in, or the activities of which affect, interstate or foreign commerce

....

18 U.S.C. § 1962(a). Plaintiff has not and could not allege that defendants Kali and the Hoskins come under the court's jurisdiction by virtue of having violated any substantive RICO provision. Congress provided federal jurisdiction for treble damages actions and injunctive relief against persons who have violated the statute's substantive provisions. The legislative history is devoid of any evidence of intent, express or implied, concerning jurisdiction over pendent parties.[6]

■ The lack of an express or implied negation of pendent party jurisdiction places this court in a position not addressed in *Aldinger.* However, reading *Aldinger* as a whole and recognizing the elementary precept that federal courts are courts of limited jurisdiction leads me to conclude that, absent evidence of express or implied negation, the strong presumption must be against exercising pendent party jurisdiction.

■ It is elementary that federal courts only have jurisdiction when a case is within the judicial power of the United States, as defined by the Constitution, and Congress has properly exercised its authority in a jurisdictional grant. *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971); *see generally,* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 3522 at 44 (1975). If a statute cannot be fairly read to grant jurisdiction to a party, the logical inference is that Congress did not intend that party to be in federal court. Such a conclusion follows almost tautologically from the fundamental axiom that federal courts are courts of limited jurisdiction. Therefore, before the court may properly

---

supports the conclusion that pendent party jurisdiction is necessarily intertwined with the initial determination of pendent jurisdiction. This is so because it is this same Art. III concern that the Court addressed in *Gibbs* relative to pendent jurisdiction.

**6.** That is, other than the always present "logical negation by implication" concept that any person not covered in the jurisdictional grant was not intended to be so covered. *See* p. 378, *infra.*

exercise jurisdiction over a pendent party it must first apply the *Aldinger* analysis to discover if Congress either expressly or by implication negated the existence of such jurisdiction. Absent any indication from Congress, given the basis of the state/federal court relationship, pendent party jurisdiction would be presumed to be "negated."

This presumption against pendent party jurisdiction is consistent with the articulated grounds justifying pendent jurisdiction in *Gibbs* and would have exceptions. In *Gibbs* the Court spoke of pendent jurisdiction first in terms of power and then in terms of discretion. In terms of power to exercise jurisdiction over pendent parties there seems to be no logical distinction, in terms of Art. III, between a pendent claim and pendent parties to that claim.[7] However, the discretionary aspect must also be taken into account. It necessarily follows that if pendent jurisdiction is discretionary, pendent party jurisdiction, which derives from the pendent claim, must also be discretionary. Once a court decides it has Art. III power, the question becomes whether as a matter of discretion the federal court *should* exercise pendent party jurisdiction.

It is my view that because of their very nature, pendent jurisdiction and pendent party jurisdiction must be considered together. Because pendent party jurisdiction by definition derives from a pendent claim, a major prudential consideration in deciding whether to exercise jurisdiction over a pendent claim involves a consideration that there are or may be pendent parties to that claim. The converse is also true, in deciding whether to exercise pendent party jurisdiction the court must carefully consider the nature and substance of the underlying pendent claim.

In *Gibbs* the Court ruled that the justification for the doctrine of pendent jurisdic-

tion involved considerations of judicial economy, convenience and fairness to litigants. These concerns apply with equal force to justifying a discretionary exercise of pendent party jurisdiction.

When viewed from the plaintiff's point of view there would seem to be little or no reason why the court should not exercise jurisdiction over pendent parties and dispose of all claims against all parties at once. However, when viewed from the perspective of the proposed pendent party the question takes on a new light. The pendent party has been hailed into federal court simply because of the fortuitous happenstance that plaintiff has both a valid federal claim against another defendant and a pendent state claim against the same defendant which also involves the pendent party. The pendent party has a legitimate right to object considering the premise that federal courts are courts of limited jurisdiction.

With the foregoing as a background I now come to the particular problem raised by defendants Kali and the Hoskins.

Plaintiff has alleged a federal RICO claim against nine defendants other than Kali and the Hoskins. Plaintiff, in one of his four state law claims, has named as defendants Kali, the Hoskins and seven of the nine defendants named in the RICO count. Plaintiff contends that this court should exercise jurisdiction over Kali, the Hoskins and the other non-RICO defendants under the doctrine of pendent (*i.e.*, pendent party) jurisdiction. Consideration of the prudential concerns involved leads me to the contrary conclusion.

It is my view at page 379, *supra*, that in deciding whether to exercise pendent party jurisdiction this court must also consider the underlying pendent claim. The sole claim against the moving defendants is under state statute; UFCA, Pa.Stat.Ann. tit. 39, §§ 351–363 (Purdon 1954). I must first

---

**7.** If a court has the power, constitutionally speaking, to hear a pendent claim between two parties already in federal court as part of a "case," there seems to be no reason why the court, as part of that same "case," would not also have the constitutional power to exercise jurisdiction over other parties involved in the pendent claim. *See Cheltenham Supply*, 541 F.Supp. at 1106 n. 5.

decide, under the *Gibbs* standard, whether this Court has the *power* to hear the pendent claim. Without the power to hear the pendent claim, there would be no reason to exercise jurisdiction over pendent parties to that claim.

I have already stated that I will assume, without deciding, that there is a valid RICO claim. Thus, the asserted federal claim has sufficient substance to confer subject matter jurisdiction. The second factor requires that the state and federal claims derive from a common nucleus of operative fact. Although strong argument can be made here that the pendent claim does not really derive from a common nucleus of operative fact, I have determined that for purposes of this decision, they do.[8] The final factor necessary for the court to have the power to hear pendent claims also presents a close question. I have nevertheless determined that, considering plaintiff's claims without regard to their state or federal character, plaintiff would ordinarily be expected to litigate them in one proceeding. I have, therefore, decided that solely for the purposes of considering the pendent party issue, that as against those defendants named in both the RICO and UFCA counts, this court has the power to hear the pendent UFCA claim. The question to be decided is—should this court exercise its discretion and extend jurisdiction over the pendent parties? Viewed on the whole, the prudential considerations of judicial economy, convenience and fairness to litigants weigh against the exercise of jurisdiction. I have, therefore, declined to do so.

Once again the starting point is the premise that federal courts are courts of limited jurisdiction and "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 (footnote omitted).[9] With this premise in mind, I must now consider whether the equities present justify overcoming the presumption against a discretionary exercise of pendent party jurisdiction. As was the case in *Gibbs* with pendent jurisdiction, the concerns are judicial economy, convenience and fairness to litigants.

■ I have decided that the concerns of judicial economy, convenience and fairness to litigants do not, in the present case, provide sufficient reason for requiring a party who would not otherwise be in federal court, to litigate in this forum. The circumstances do not warrant upsetting the normal balance of the state/federal court relationship. The exceptional cases where the presumption may be overcome will primarily involve those situations in which the proposed pendent party is necessary or indispensable to the resolution of a valid pendent claim.[10] In those limited instances where, as a practical or factual matter, it would be impossible or create serious hardship to litigate the plaintiff's valid pendent claim against a defendant properly in federal court, without the proposed pendent party, then the court properly may agree to exercise pendent party jurisdiction.

Another limited exception might involve exclusive federal jurisdiction statutes where a valid pendent claim with proposed pendent parties has been asserted. If, as a practical matter, the court decides all of the claims should be tried together, the plaintiff may be allowed to litigate all of his

---

**8.** It is an extremely close question whether the UFCA claim derives from a common nucleus of operative fact with the RICO claim. There is little doubt that both claims "derive" from the same set of facts as that term is used in its broadest sense. However, the UFCA claim involves a later stage in the factual sequence and a different focus from the RICO claim. It is not a situation where the operative facts necessary to the RICO claim gave rise to a similar state law claim, as would be the case with the state RICO violation alleged in count four.

**9.** If needless decisions of state law between two parties already in federal court are to be avoided, the prohibition is even stronger when applied to a federal court deciding state law questions between two parties who would not otherwise be in federal court.

**10.** By "valid pendent claim" I mean one that the court has the power to decide and that the court, in the exercise of its discretion, has decided to hear.

claims against all parties in federal court.[11] The difference between a plaintiff in the exclusive grant of jurisdiction situation and a plaintiff with a non-exclusive federal claim is that ordinarily a plaintiff who would like to have all his claims tried together can do so in state court, the court of general jurisdiction. Due to the exclusive grant of jurisdiction, the plaintiff would be precluded from litigating his entire case in state court.

Neither Kali nor the Hoskins appear to be indispensable or necessary parties to the plaintiff's UFCA claim. There is no reason why plaintiff cannot proceed on the pendent UFCA claim, if he decides to pursue it in federal court, against only those defendants properly named in both the RICO and UFCA counts. If plaintiff believes it necessary to litigate in a single action its pendent claim against all of the defendants named in that count, it must do so in state court, where jurisdiction over all may be obtained.

In sum, although this court may have the power to exercise pendent party jurisdiction in the present action, I decline to do so. The present factual situation does not present one of the limited instances where the presumption against exercising pendent party jurisdiction is established. The motion to dismiss for lack of jurisdiction will be granted.

---

**11.** The plaintiff has asserted that the RICO statute is an exclusive federal jurisdiction statute. However, it is settled that federal jurisdiction is not exclusive unless Congress chooses to make it exclusive. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). In the RICO statute there is specific reference to "United States district court[s]." There is no indication, however, that Congress intended the grant of jurisdiction to be exclusive. When Congress wants jurisdiction to be exclusive it can so provide. *See e.g.,* Federal Tort Claims Act (FTCA), 28 U.S.C. 1346(b). Plaintiff's reference to *Tarasewicz v. United States,* 582 F.Supp. 90 (E.D.Pa.1984), is therefore inapposite as *Tarasewicz* involved the FTCA.