ALLSTATE INSURANCE
COMPANY, Plaintiff,

v.

BETHLEHEM AREA SCHOOL DIS-
TRICT and BB, a Minor by and
through his Parents and Natural
Guardians, JB and NB and JB and NB,
Individually, Defendants.

Civ. A. No. 86–6218.

United States District Court,
E.D. Pennsylvania.

Dec. 30, 1987.

Joseph F. Leeson, Jr., Bethlehem, Pa., for Allstate Ins. Co.

Larry B. Selkowitz, Harrisburg, Pa., Thomas A. Brophy, Harold R. Berk, Philadelphia, Pa., for Bethlehem Area School Dist.

Jerry A. Snyder, Allentown, Pa., for BB, JB & NB.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

This case, in which the plaintiff alleges that the Court's jurisdiction is based upon federal law and diversity of citizenship, presents a situation unique in the application of statutes designed to enhance opportunities for handicapped students under the Education for All Handicapped Children Act, 20 U.S.C. § 1400, *et seq.* (EHA) and the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Plaintiff Allstate Insurance Company seeks a declaration pursuant to the Declar-

atory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that defendant Bethlehem Area School District, under the aforementioned federal statutes relating to the education of the handicapped, is responsible for the costs of an attendant needed by the minor defendant, BB, while he is in school.

In 1982, BB was injured in an automobile accident, resulting in the permanent implantation of a tracheostomy.[1] Because the tracheostomy is the means by which BB breathes, he needs, at all times, ready access to a trained attendant who can maintain the airway should the need arise.

Pursuant to an automobile liability insurance policy under the terms of the former Pennsylvania No–Fault Motor Vehicle Insurance Act, 40 Pa.Stat.Ann. § 1009.101, *et seq.* (repealed), Allstate has paid the child's medical expenses, including the cost of the attendant, since the date of the accident. When BB returned to classes in the Bethlehem Area School District in 1986, Allstate demanded that the school district begin paying the cost of the attendant during the school day, contending that the presence of the attendant is a "related service" under the EHA and Rehabilitation Act. When the school district refused, Allstate instituted the present suit, seeking the Court's declaration that the attendant is a related service for which the defendant school district is obligated to pay.

In Count II of the amended complaint, Allstate seeks a declaration against BB's parents, JB and NB, that the insurance policy, which reduces coverage for certain government benefits which an insured is entitled to receive, does not cover the cost of the attendant during the school day.

Defendant Bethlehem Area School District has moved for a stay of proceedings here, invoking the doctrine of "primary jurisdiction". The school district contends that where the legislation upon which an action is based provides for administrative procedures, the Court should defer to the expertise of the administrative agency,

staying its hand until the agency has acted. Here, the school district argues, there is a comprehensive "due process" mechanism through which the term "related service" must be defined. Thus, the Court should refer the action to the appropriate education agency for its initial determination of whether the cost of the attendant is a "related service" under the EHA.

Plaintiff argues that there are no "special education issues" involved which would warrant referral to an agency. Specifically, plaintiff contends that,

> The only real issue in the case concerns whether the health needs of the minor, BB, must be provided for by the Bethlehem Area School District pursuant to the Education of the Handicapped Act or the Federal Rehabilitation Act. . . .
>
> Therefore, the only issue remaining in this case concerns the interpretation of the insurance policy issued by Allstate Insurance Company, and an application of the facts of BB's medical condition and health needs, to the Federal Statutes. . . .
>
> There is *no* issue before this Court concerning the educational needs of the minor child."

(Answer of Plaintiff to Motion of Defendant, Bethlehem Area School District, for a Stay of Proceedings, Doc. # 15 at 2. Citations omitted. Emphasis in original.).

As a response to defendant's motion, this argument reveals a complete lack of understanding of the statutes upon which the plaintiff purportedly relies. The EHA, and in this context, the Rehabilitation Act, are not statutes to provide for the "health needs" of school-age children. The EHA was enacted, "[T]o assure that all handicapped children have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs . . ." 20 U.S.C. § 1400(c). Moreover, the definition of "related service" in the EHA inextricably connects it to special

---

**1.** A tracheostomy is defined as, "The surgical formation of an opening into the trachea through the skin." *Webster's Third New International Dictionary of the English Language* 2420

(16th Ed.1971). Trachea, in turn is defined as, "The main trunk of the system of tubes by which air passes to and from the lungs in vertebrates . . .". *Id.*

education: "The term 'related services' means transportation, and such developmental, corrective, and other supportive services ... as may be required to assist a handicapped child to benefit from special education ...". 20 U.S.C. § 1401(17).[2] It is, in fact the combination of "special education" and "related services" which together define the statutory term "free appropriate public education". § 1401(18). *See also, Hendrik Hudson District Board of Education v. Rowley,* 458 U.S. 176, 188, 102 S.Ct. 3034, 3041–42, 73 L.Ed.2d 690, 700 (1982).

Under the EHA and its implementing regulations found at 34 C.F.R. § 300, *et seq.* and 22 Pa.Code §§ 13 and 341,[3] no student identified as exceptional or handicapped within the meaning of the EHA may be assigned to a special education program without a written Individualized Education Program (IEP). 34 C.F.R. § 300.342, 22 Pa.Code § 341.13. It is in the IEP that the related services necessary for that child to benefit from his prescribed special education program are enumerated. 34 C.F.R. § 300.346, 22 Pa.Code § 341.15.

The EHA also specifies certain procedural safeguards, § 1415, which provide, *inter alia,* "an opportunity to present complaints with respect to any matter relating to ... the provision of a free appropriate public education to [a handicapped] child.", § 1415(b)(1)(E), with the further opportunity "for an impartial due process hearing" conducted by the state or local educational agency as determined by state law. § 1415(b)(2)[4]. Any person aggrieved by a final decision of the state educational agency may seek redress by bringing an action in district court. § 1415(e)(1) & (2).

While the statute requires that the due process procedures described be available, it is through the federal and state regulations implementing the EHA that access to the procedures is prescribed. For example, 34 C.F.R. § 300.504 enumerates certain actions which may not be taken by an education agency without prior parental notification. Among these actions is the proposal or refusal, "[T]o initiate or change the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child." § 300.504(a)(1) & (2). Pursuant to § 300.506, either the parent or public educational agency is permitted to "[I]nitiate a hearing on any of the matters described in § 300.504(a)(1) and (2)". The Pennsylvania School Code, at 22 Pa.Code § 13.31–§ 13.33, further describes the procedures available to parents and school districts when they disagree as to the appropriate educational program to be provided to an exceptional child. These procedures are arranged on a continuum beginning with notification when a change is requested or recommended, through an informal conference between the parties, a full, formal due process hearing and right to appeal to the Pennsylvania Secretary of Edu-

2. The term "handicapped child" is also defined in the statute and a child is not presumed to be "handicapped" and so entitled to services under the EHA simply because of his physical condition. Here, however, plaintiff contends and defendants do not dispute that BB is enrolled in a special education program in the defendant school district, although no more specific information relating to it appears on the record before the Court. Thus, we can only assume that the child has been identified as "handicapped" within the meaning of the EHA, since a child is entitled to special education services under the act only when so identified. *See,* 20 U.S.C. § 1401(1), (16) and 34 C.F.R. §§ 300.5 and .530–.534.

3. The EHA is, operationally, a statute to provide financial assistance to the states for the education of handicapped children, with eligibility for funding contingent upon the state's compli-

ance with the various terms of the statute and regulations, including adoption of its own special education regulations to effectuate standards for special education found in the EHA. 34 C.F.R. § 600.

4. Under Pennsylvania regulations, it is the Pennsylvania Department of Education under whose auspices the required due process hearing is conducted. *See,* 20 U.S.C. § 1401(7), 22 Pa.Code §§ 13 and 341. Likewise, under the EHA, its regulations and Pennsylvania regulations, the Pennsylvania Department of Education is the "agency" to whose expertise the school district requests that we ultimately defer the question of whether the provision of a tracheostomy attendant is a "related service" within the meaning of the EHA in accordance with the due process procedures available, which will be described, *infra.*

cation. The procedures may be initiated by either the parent or the school district. If either party is dissatisfied with the Secretary's decision, the final step in the administrative process, that party may then bring a civil action pursuant to 20 U.S.C. § 1415.

■ The requirements of the Rehabilitation Act parallel those of the EHA with respect to educating handicapped children, and the regulations implementing it for the Department of Education, 34 C.F.R. Part 104, overlap those implementing EHA. Although exhaustion of administrative procedures is generally not required before bringing a district court action under the Rehabilitation Act, *Greater Los Angeles Council on Deafness, Inc. v. Community Television of Southern California,* 719 F.2d 1017 (9th Cir.1982), a child covered by both the EHA and the Rehabilitation Act is required to exhaust EHA procedures before bringing a civil action under the Rehabilitation Act. 20 U.S.C. § 1415(f).[5]

From the foregoing description of procedures set forth in the statute and regulations, it is obvious that "related services" has no meaning under the EHA except as part of the full complement of special education services available through it. It is also obvious that, as the defendant school district contends, there is an elaborate administrative process under the EHA through which a child's eligibility for a particular "related service" must be established and through which disputes concerning such eligibility must proceed before the Court becomes involved.

As the Court understands the application of the foregoing procedures to the situation here present, if we grant defendant's motion to stay pending administrative proceedings, those proceedings would be initiated by the defendant parents or the defendant school district either by notice of a proposal by the district to modify BB's IEP to add the tracheostomy attendant as a related service or by the parents' request

that the school district do so. If both defendants agree to the change, the school district would then begin paying for the tracheostomy attendant. Presumably, however, such agreement would not take place. The party refusing to agree to change the IEP would so notify the other defendant and the pre-hearing conference would be scheduled. That, too, presumably, would fail to elicit the parties' agreement to the change. The party seeking the change would then request a due process hearing which would be held in accordance with all statutory and regulatory provisions pertaining to it. The losing party would then appeal to the Pennsylvania Secretary of Education. That decision would then be returned to this Court for review by the losing party.

■ On the present record of this case, it is difficult to imagine how the foregoing scenario would develop. Both defendants have denied that the services of the tracheostomy attendant for BB may be considered a "related service" under the EHA. The school district has already refused plaintiff's request to pay for the attendant, and so is not likely to request the change in BB's IEP. The defendant parents are not parties to the instant motion and do not appear to have any inclination to seek a change in the IEP. Which of those defendants, then, will initiate and continue the process of having it so determined? Is this Court to order one of the defendants to become the "plaintiff" at the agency level? It is not surprising, in light of this dilemma, that the moving defendant failed to include in its motion, "[A] form of order which, if approved by the court, would grant the relief sought by the motion", as required by Loc.R.Civ.P. 20(a). This Court, too, would be hard pressed to draft a comprehensible order to effect the scenario described above. It is true that we cannot, in the first instance, simply declare that some-

5. In enacting amendments to 20 U.S.C. § 1415 in 1986 to provide for the recovery of counsel fees, Congress specifically preserved the rights of handicapped children to remedies available under, *inter alia,* the Rehabilitation Act, but required that where relief available under that statute is also available under the EHA, the administrative procedures found in § 1415(b)(2) and (c) (described *supra.*) must be exhausted to the same extent as if the claim had been raised under the EHA.

thing is a "related service" under the EHA. Likewise, we cannot alter the administrative process, specified by the statute and applicable regulations, through which a service needed by a school-age child is determined to be a "related service" under the EHA. Thus, it is also true, as plaintiff argues, that in the context of this case, the administrative process is not available to the party seeking a change in the child's educational program.

That fact does not, however, confer upon the Court the power to disregard the statutory scheme through the mechanism of a declaratory judgment. It is well settled that a district court may grant a declaratory judgment only, "[W]hen there is already an actual controversy, based upon independent jurisdictional grounds, before the court." *Weaver v. Wilcox*, 650 F.2d 22, 25 (3d Cir.1981). "Every case brought under the Act must fall within federal jurisdiction and present a justiciable issue." *Federal Kemper Insurance Co. v. Rauscher*, 807 F.2d 345, 351 (3d Cir.1986). Under the EHA, there is no original subject matter jurisdiction in the federal courts to adjudicate a controversy such as that presented here. *Stubbs v. Kline*, 463 F.Supp. 110 (W.D.Pa.1978).[6]

Thus, it appears that the only course left for the Court to follow is to dismiss Count I of the amended complaint, rather than stay it pending an administrative determination that may never occur and absent which the Court has no jurisdiction to consider the claim asserted by the plaintiff. This result is proper even though subject matter jurisdiction is premised on diversity of citizenship as well as on the EHA. The claim in Count I is premised solely on the EHA, its implementing regulations and, necessarily, the corresponding Pennsylvania regulations mandated by the EHA. The Pennsylvania regulations, however, give no greater access to court than the EHA and its regulations. Thus, the presence of diversity of citizenship avails the plaintiff nothing with respect to Count I.

Neither of the defendants has suggested in the instant motion that the action be dismissed. Nevertheless, we have an independent obligation to assure ourselves that there is jurisdiction over the subject matter of cases before us. Fed.R.Civ.P. 12(h)(3), *Williams v. Secretary of the Navy*, 787 F.2d 552 (Fed.Cir.1986), *Charles Kurz Co. v. Lombardi*, 595 F.Supp. 373 (E.D.Pa. 1984). In attempting to fulfill that fundamental obligation, yet avoid a result evidently desired by none of the parties, the Court has examined several other aspects of subject matter jurisdiction over this action to determine whether, absent the statutory scheme resulting in lack of original jurisdiction under the EHA, we might otherwise have subject matter jurisdiction over Count I. We have concluded that subject matter jurisdiction is lacking, no matter how the issue is approached, even if we could somehow avoid the application of the procedures mandated by the EHA.

For example, one aspect of subject matter jurisdiction, or, in other words, whether there is a case or controversy before the Court, is the plaintiff's standing to seek to enforce the EHA. In order to be properly before the Court, a plaintiff must have suffered a real or threatened injury, *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), the interests raised by the plaintiff must, "[F]all within the zone of interests protected by the law invoked", *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, 569 (1984), and the plaintiff must seek to assert his own rights, not those of another. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed. 2d 700 (1982). These concerns may be summarized in language which the Su-

---

**6.** Other district courts have held that there is jurisdiction to consider the sufficiency of the state administrative process available to a handicapped child seeking to enforce his rights under the EHA. *Hark v. School District of Philadelphia*, 505 F.Supp. 727 (E.D.Pa.1980), *Doe v. Anrig*, 500 F.Supp. 802 (D.Mass.1980). These cases rely, however, on 20 U.S.C. § 1415, which confers a cause of action on persons aggrieved by state administrative proceedings. The courts concluded that where the administrative proceedings were deficient, the plaintiff was aggrieved by the decision rendered there within the meaning of the EHA. Here, plaintiff does not challenge the administrative process but rather seeks to avoid resorting to it.

preme Court characterized as expressing the "core component" of standing, derived directly from the Constitution: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. at 751, 104 S.Ct. at 3324, 82 L.Ed.2d at 569. (Citation omitted).

■ Applying the foregoing standards to this case, it is obvious that the plaintiff lacks standing to press its claim against the school district. Plaintiff has not suggested, nor can the Court discern a common law or Constitutional right to have a school district provide an extraordinary service to a handicapped child, however necessary it may be. Whatever rights to such an expenditure of public funds which may exist were created and delineated by Congress through the EHA. As a complete stranger to the statutory scheme, the plaintiff can suffer no injury at the hands of the defendant school district and consequently has no recourse to the courts. Stated another way, the plaintiff's relationship with the defendant parents through the insurance contract is in no way altered or disturbed by the EHA. Plaintiff has suffered no *injury* as a result of the statutory scheme, but rather seeks a windfall *benefit* from it. Moreover, plaintiff seeks to assert the rights of the defendants BB, JB and NB, not its own. Finally, the claim does not fall within the "zone of interests" created and protected by the statute invoked. The EHA was certainly not enacted to shift obligations from an insurance company to a school district.

Still another approach to the issue of standing is the question of whether a private right of action exists on behalf of this plaintiff under the EHA. While other courts have held that the EHA does create a private right of action for claims which do not fall within the usual administrative process or which the specified procedures do not address, *Gary B. v. Cronin*, 542 F.Supp. 102 (N.D.Ill.1980), *Loughran v. Flanders*, 470 F.Supp. 110 (D.Conn.1979), those decisions are not applicable here in that they considered the claims of handicapped children and their parents. Here, we should return to the method of analysis

found in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). That method requires the Court to consider four factors when deciding whether a particular plaintiff may assert a particular cause of action: 1) Whether the plaintiff is one for whose special benefit the legislation was enacted; 2) Whether there was any legislative intent (explicit or implicit) to create or deny such a remedy; 3) whether it is consistent with the legislative scheme to imply such a remedy; 4) whether the cause of action is one traditionally relegated to state law such that it would be inappropriate to imply a federal remedy. It is quite clear, without further elaboration, that this plaintiff cannot meet the foregoing standards with respect to the EHA.

Thus, it now becomes apparent that plaintiff's lack of opportunity to participate in the administrative process mandated by the EHA is not a reason for the Court to disregard or circumvent that process by considering plaintiff's claim in the context of a declaratory judgment action. Rather, the lack of a mechanism through which plaintiff may have its claim considered within the statutory scheme merely highlights plaintiff's lack of standing under the EHA. In the absence of standing, and, hence, subject matter jurisdiction, this Court has no choice but to dismiss Count I of the complaint.

The same jurisdictional issues do not, of course, apply to Count II, where subject matter jurisdiction is premised upon diversity of citizenship only. Nevertheless, although Count II appears to require only a contract interpretation, in reality that task is here dependent upon whether the presence of the tracheostomy attendant is necessary for the child, BB, to benefit from his special education program, *ie.* is a "related service" under the EHA. Only when that question is answered can the Court determine whether the insurance contract exclusion relating to the availability of government benefits applies. Once again, this Court cannot properly make that determination. Thus, while we do not, technically, lack subject matter jurisdiction over Count II, as a practical matter, we cannot adjudicate the claim made there. Consequently, we conclude that plaintiff has failed to

state a claim upon which relief may be granted in Count II, requiring the dismissal of that claim as well.[7]

In their answer to the amended complaint, defendants BB, JB and NB also asserted a counterclaim against the plaintiff, alleging that it has failed to pay certain medical expenses on behalf of BB as it is obligated to do under the insurance contract. The counterclaim alleges no jurisdictional facts, however. Consequently, the Court cannot determine whether there is subject matter jurisdiction in this court in light of the dismissal of Count II of the amended complaint. Thus, we will also dismiss defendants' counterclaim, subject to their right to amend their pleading to assert a claim over which the Court has independent subject matter jurisdiction or to reassert it if plaintiff ultimately amends the complaint to assert a viable claim against the counterclaim defendants.

### ORDER

And now, this 30th day of December, 1987, upon consideration of defendant Bethlehem Area School District's motion to stay proceedings and plaintiff's response thereto, IT IS ORDERED that the motion is DENIED.

IT IS FURTHER ORDERED that Count I of the amended complaint is DISMISSED for want of subject matter jurisdiction.

IT IS FURTHER ORDERED that Count II of the amended complaint is DIS-

MISSED for failure to state a claim upon which relief may be granted. Plaintiff may amend Count II in accordance with the accompanying memorandum within twenty (20) days of the entry of this order.

IT IS FURTHER ORDERED that the counterclaim of defendants BB, JB and NB is DISMISSED without prejudice to their right to amend it within thirty (30) days of the entry of this order.

---

7. In dismissing Count II of the complaint, we are relying upon *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980), in which the court wisely stated that, "The district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action." In choosing to exercise this inherent power, we are, of course, mindful of the standards governing dismissals under Fed.R.Civ.P. 12(b)(6), *i.e.,* that a claim may be dismissed only when the plaintiff can prove no set of facts which would entitle him to relief, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and that all well-pleaded factual allegations of the complaint must be accepted as true. *Scheuer v. Rhoades,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The latter standard does not, however, require the Court to accept as true legal conclusions, opinions or deductions merely because they appear in the complaint. *See,* 2A Moore' Federal Practice 1264 (2nd Ed.1985). Here, the claim made in Count II arises from the "fact" that the provision of a tracheostomy attendant is required by the EHA and/or the Rehabilitation Act. That "fact" is actually a legal conclusion that must be established if the contract limitation is to apply so as to reduce plaintiff's obligations under the insurance contract. As we have explained at length, there is no mechanism available through the EHA or Rehabilitation Act by which the plaintiff can establish, in this action and in this Court, BB's entitlement to having the defendant school district pay the cost of the attendant during the school day. Thus, as this action is presently pleaded, plaintiff cannot prove any set of facts which would entitle it to relief in Count II.

If plaintiff can state a contract claim that is independent of the EHA claim or would not otherwise require the Court to make a declaration of rights under that statute, it may, of course, amend the complaint accordingly.