**STECO, INC.**

v.

**S & T MANUFACTURING, INC., Saul Spector, Charles Spector, Jerry L. Blecker, Steco Sales, Inc., and Steco Leasing Incorporated.**

**Civ. A. No. 89–2239.**

United States District Court, E.D. Pennsylvania.

Aug. 27, 1990.

*v. NCR Comten, Inc.,* 619 F.Supp. 1577 (E.D.Pa.      1985), *aff'd,* 800 F.2d 1138 (3d Cir.1986).

Thomas P. Preston, Philadelphia, Pa., for Steco, Inc.

David F. Michelman, Philadelphia, Pa., for Jerry L. Blecker.

M. Melvin Shralow, Philadelphia, Pa., for S & T Mfg., Inc., Saul Spector, Steco Sales, Inc. and Steco Leasing Inc.

Roger A. Johnsen, Philadelphia, Pa., for Charles Spector.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant S & T Manufacturing ("S & T") and defendant Saul Spector move for summary judgment against plaintiff Steco, Inc. ("Steco") on Counts I and II of the complaint, which allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, because they contend that plaintiff is not able to prove a RICO "pattern of racketeering activity" against them. Further, defendants S & T and Saul Spector move for dismissal of the remaining state law counts of the complaint for lack of pendent jurisdiction.[1] Defendants Steco Sales, Inc. and Steco Leasing Incorporated move for summary judgment against plaintiff on all counts of the complaint.

Plaintiff agrees with summary judgment as to defendants Steco Sales, Inc. and Steco Leasing Incorporated.[2] Therefore, I will grant the motion filed on behalf of these

---

1. Pursuant to 28 U.S.C. § 1332, no diversity jurisdiction exists because plaintiff's principal place of business is in Pennsylvania, defendant Jerry Blecker is a citizen of Pennsylvania, and defendant S & T is a Pennsylvania corporation.

2. See Memorandum of Law of Plaintiff Steco, Inc. in Opposition to the Motion for Summary Judgment of Defendants S & T Manufacturing and Saul Spector, at 1 n. 1.

two defendants. In addition, plaintiff does not even assert a RICO violation against defendant S & T in Counts I and II of the complaint.[3] Therefore, the motion for summary judgment of defendant S & T based upon the RICO counts shall be denied. The issue concerning a pattern of racketeering activity as to defendant Saul Spector remains and is discussed below.

Defendant S & T also contends that it should be dismissed for lack of pendent jurisdiction since plaintiff asserts no RICO claim against S & T, but asserts only common law claims for breach of contract, fraud, and fraudulent and negligent misrepresentation. This jurisdictional issue is discussed below.

## I. STATEMENT OF FACTS

In January 1988, defendant Saul Spector was the sole shareholder of defendant S & T, a manufacturer of trailers and dump truck bodies. Defendant Charles Spector, Saul's son, and defendant Jerry Blecker were principal officers of S & T. In early 1988, negotiations began between defendants Saul Spector, Charles Spector, Jerry Blecker, and plaintiff's agents for the purchase of the assets of defendant S & T by plaintiff.[4] The closing for the sale of the assets occurred on May 20, 1988, and defendants Charles Spector and Jerry Blecker became, respectively, president and vice president of Steco as part of the sale agreement.

After the closing, S & T remained an existent corporation and collected outstanding accounts receivable relating to pre-closing sales by S & T. On behalf of both S & T and Steco, defendant Jerry Blecker was responsible for sorting the payments received from customers and depositing the money into the appropriate account for S & T or Steco.

Plaintiff alleges that defendant Saul Spector schemed with defendants Charles Spector and Jerry Blecker to defraud Steco, and that they used the mail and telephone lines to further their fraudulent scheme. Allegedly, this scheme originated during the negotiations for the purchase of S & T's assets when defendants Saul Spector, Charles Spector, and Jerry Blecker misrepresented S & T's financial and operational status. The scheme continued after the closing when defendants converted checks and diverted funds from Steco for their personal use. To defraud plaintiff, defendants allegedly billed Steco customers on stationery for S & T and Steco Sales, an inactive business also owned by defendant Saul Spector.

Plaintiff asserts that the individual defendants converted twelve checks as part of their RICO scheme, most of which were endorsed by defendants Jerry Blecker or Charles Spector and deposited into an account controlled by Jerry Blecker or Charles Spector. However, one check, a check from Creech Services, Inc. dated August 8, 1988 and payable to S & T in the amount of $4,500 for a deposit on the purchase of a ram trailer,[5] was allegedly endorsed by defendant Saul Spector. This check was stamped for deposit into the account for the Law Office of Jerry L. Blecker, the same as many of the other allegedly converted checks. This check is also endorsed as follows: "by S & T Manuf, [signature] Pres." The signature on this check is illegible. Saul Spector denies signing the check.[6] Defendants Charles

---

**3.** In Counts I & II of the complaint, plaintiff alleges violations of sections 1962(c) and (d) by defendants Saul Spector, Charles Spector, and Jerry Blecker. Defendant S & T is the alleged RICO "enterprise," not the RICO "person" or racketeer. Moreover, a corporation cannot be both the RICO "enterprise" and "person" under section 1962(c). *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1358–59 (3d Cir.1987).

**4.** Blue Tee Corporation, the parent of Steco, negotiated the purchase of the assets of S & T,

and Steco, as buyer, executed the Asset Purchase Agreement on May 20, 1988.

**5.** *See* Memorandum of Law of Plaintiff Steco, Inc. in Opposition to the Motion for Summary Judgment of Defendants S & T Manufacturing and Saul Spector, Exhibits H and M.

**6.** *See* Reply of Defendants S & T Manufacturing, Inc., Saul Spector, Steco Sales, Inc., and Steco Leasing Incorporated to Memorandum of Law of Plaintiff Steco, Inc. in Opposition to the Motion for Summary Judgment of Defendants S & T Manufacturing and Saul Spector, at 14 n. 12.

Spector and Jerry Blecker refused to answer any questions when they were deposed concerning the endorsement on the Creech Services check.

In addition to the signature on the Creech Services check, plaintiff's evidence allegedly tying defendant Saul Spector to post-closing fraud includes an affidavit by the controller of Steco, Carolyne Hepworth, who witnessed ongoing, post-closing contact and telephone conversations between the individual defendants. On several occasions Ms. Hepworth heard defendant Blecker say that Saul Spector would return to take over the business after it had been "run into the ground." [7]

In December 1988, upon discovery of the diversion of funds, Steco terminated defendants Charles Spector and Jerry Blecker. Plaintiff filed this suit on March 29, 1989.

## II. DISCUSSION

### A. *Pattern of Racketeering Activity*

In deciding a motion for summary judgment, the inquiry is whether there is a genuine and material factual issue that the finder of fact may reasonably resolve in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Defendant Saul Spector claims that plaintiff cannot establish a pattern of racketeering activity with respect to him, and therefore, that plaintiff's RICO claims against him must fail. The question presented is whether plaintiff has sufficient evidence for a jury to reasonably find a RICO pattern of racketeering activity as to defendant Saul Spector.

Plaintiff claims that defendant Saul Spector violated sections 1962(c) and (d) of the RICO statute.[8] The elements for a violation of section 1962(c) are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imprex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Conspiring to violate section 1962(c) would constitute a violation of section 1962(d), and this may be established by evidence that the alleged conspirator agreed to the commission of the racketeering acts. *United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir.1985). A "pattern" is an element necessary to prove a violation of sections 1962(c) and (d).

■ A "pattern of racketeering activity"[9] requires the commission of at least two predicate acts in a manner that shows both relationship and continuity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. In the present case, the predicate acts alleged by plaintiff are mail and wire fraud, pursuant to 18 U.S.C. §§ 1341 and 1343, committed when defendants used the mail and telephone lines to misrepresent the financial status and assets of S & T to plaintiff before the closing, and then to send fraudulent billing and to wrongfully receive and deposit checks after the closing.

■ Relationship exists if the predicate acts have similar "purposes, results, participants, victims, or methods of commission or otherwise are interrelated by

---

**7.** *See* Affidavit of Carolyne Hepworth, Memorandum of Law of Plaintiff Steco, Inc. in Opposition to the Motion for Summary Judgment of Defendants S & T Manufacturing and Saul Spector, Exhibit C.

**8.** Plaintiff alleges a violation of 18 U.S.C. § 1962(c) in Count I and a violation of 18 U.S.C. § 1962(d) in Count II. Sections 1962(c) and (d) provide as follows.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**9.** The RICO statute defines "pattern of racketeering activity" as "at least two acts of racketeering activity, one of which occurred after [October 15, 1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

distinguishing characteristics and are not isolated events." *H.J. Inc.*, 109 S.Ct. at 2901. In the present case, the alleged predicate acts are related in that the purpose and result of all predicate acts were to defraud Steco, the only victim, and the same persons, Saul Spector, Charles Spector and Jerry Blecker, conspired and committed the acts. The alleged pre-closing and post-closing fraudulent acts were of a different nature, but the later acts followed immediately after the sale of assets with no significant lapse of time.

■ The additional requirement of the pattern test is continuity, so that the acts "amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 109 S.Ct. at 2900. Predicate acts amount to continued criminal activity if they were committed over a closed period of time consisting of more than a few weeks or months. *Id.* at 2902. A few acts extending over a closed period of about six months is *not* sufficient to demonstrate continuity. *See Marshall–Silver Construction Co., Inc. v. Mendel*, 894 F.2d 593 (3d Cir.1990).

■ In the present case, the pre-closing period covered five months, from January to May of 1988, and the post-closing activity ended when defendants Charles Spector and Jerry Blecker were discharged in December 1988, a period of seven months. As a closed period of time, neither the pre-closing nor the post-closing period is sufficient to satisfy the continuity requirement. However, together the two periods span twelve months which would satisfy the temporal concept of continuity.

Evidence of defendant Saul Spector's involvement in the alleged post-closing fraud is central to whether plaintiff can prove a continuous pattern as to Saul Spector because the five-month pre-closing period alone does *not* establish continuity. Defendant Saul Spector contends that plaintiff has no evidence that he was involved in the alleged post-closing fraud. Plaintiff, on the other hand, asserts that a pattern may be shown because Saul Spector was involved in the post-closing fraud as evidenced by (1) his signature on one of the converted checks, the Creech Services check, (2) his frequent, post-closing contacts with defendants Charles Spector and Jerry Blecker, and (3) adverse inferences because defendants Charles Spector and Jerry Blecker asserted their fifth amendment privilege and refused to answer questions about activities relating to the post-closing fraud.

■ First, no adverse inference can be drawn against defendant Saul Spector because the other defendants refused to answer questions. Adverse inferences from the assertion of the fifth amendment privilege are allowed in civil cases only against the party who invoked the privilege. *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976).

Second, the inferences that can be drawn from the statements by the witness Carolyne Hepworth concerning the frequent contact between defendant Saul Spector and defendants Charles Spector and Jerry Blecker are purely speculative as to whether Saul Spector knowingly agreed to or participated in the post-closing fraud. It would be natural for Saul Spector to have frequent contact with his son, Charles, and with Jerry Blecker, who continued to provide professional services for him. By itself, her testimony would not be sufficient to create a genuine issue of fact for the jury. It is necessary to look to Saul Spector's alleged signature on one of the converted checks.

Finally, the check from Creech Services was stamped for deposit into the account for Mr. Blecker's law office, the same as many of the other converted checks, but was signed, "By S & T Manuf, [signature] Pres." Plaintiff contends that the signature is defendant Saul Spector's. Defendant Saul Spector denies ever seeing or signing this check.

The signature is illegible, but it looks different from the signatures of defendants Jerry Blecker or Charles Spector on the other converted checks. Furthermore, the endorsement includes "By S & T Manuf" and "Pres.", and Saul Spector was the president of S & T before and after the closing. When compared with other signa-

tures by Saul Spector, such as his signatures on the closing documents for the sale of S & T's assets, the possibility that the signature is Saul Spector's cannot be ruled out with certainty.

Although defendant Saul Spector denies signing the check, I find that his credibility and the check and signature itself are factual matters which should be reviewed and decided by the jury. A motion for summary judgment pursuant to Rule 56 "by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. Therefore, I conclude that a jury could find that the signature on the Creech Services check was that of defendant Saul Spector.

Whether the signature on the Creech Services check is that of defendant Saul Spector is material to the issue of Saul Spector's alleged involvement in the post-closing fraud, and thus, the pattern element of the RICO claim against Saul Spector. Plaintiff's evidence is sufficient for a jury to find a pattern of racketeering activity with respect to defendant Saul Spector.

### B. *Pendent–Party Jurisdiction*

■ Defendant S & T contends that the court has no jurisdiction over the claims alleged against S & T, all of which are common law claims.[10] In its complaint, plaintiff asserts federal question jurisdiction over the RICO claims against the other defendants and pendent jurisdiction over the common law claims for breach of contract, fraud, and fraudulent and negligent misrepresentation. However, since S & T is not a party to the RICO claims, *pendent-party* jurisdiction must exist for this court

to have subject matter jurisdiction over the claims against S & T.

Pendent-*claim* jurisdiction may exist over nonfederal claims between parties who are properly before the court with a substantial federal claim, if the federal and nonfederal claims arise from a "common nucleus of operative facts" and the claims are such that the plaintiff "would ordinarily be expected to try them in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The court has the power to exercise pendent jurisdiction because the federal and nonfederal claims are said to comprise "one constitutional 'case'". *Id.*

On the other hand, pendent-*party* jurisdiction involves nonfederal claims against parties who are not otherwise properly before the court. *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). In the present case, there is no independent basis for jurisdiction over the common law claims against defendant S & T. When a party is "not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim." *Id.* at 18, 96 S.Ct. at 2422.

In addition to the criteria for "one constitutional case"—i.e., that the case includes a substantial federal claim, that the nonfederal claim arises from the same operative facts, and that the claims are such that they would ordinarily be tried together—pendent-party jurisdiction requires a close reading of the relevant jurisdictional statutes. Furthermore, in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the Court in determining whether pendent-party jurisdiction exists stated that "we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly."[11] *Id.* at 2007.

---

**10.** Plaintiff's common law claims against S & T are as follows: Count III and Count IV are claims for breach of contract; Count V is a claim for common law fraud; Count VI is a claim for fraudulent misrepresentation; and

Count VII contains claims for negligence and negligent misrepresentation.

**11.** In *Finley,* the Court held that pendent-party jurisdiction was not available under the Federal Tort Claims Act because the statute conferred

In the present case, federal question jurisdiction exists over the RICO claims against defendants Saul and Charles Spector and Jerry Blecker pursuant to 18 U.S.C. § 1964(c), which provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." Accordingly, section 1964(c) grants jurisdiction over a claim against a party who has violated section 1962. However, section 1964(c) and the legislative history of RICO do not manifest an express or implied congressional grant of pendent jurisdiction over a claim against a party who has not violated section 1962. *Chas. Kurz Co. v. Lombardi*, 595 F.Supp. 373, 378 (E.D.Pa.1984).

Reading pendent-party jurisdiction into RICO's silence on the matter would be to read section 1964(c) broadly and *assume* that Congress authorized pendant-party jurisdiction under the statute, contrary to the principles for determining pendent-party jurisdiction as outlined in *Finley.* Therefore, I conclude that pendent-party jurisdiction does not exist over Steco's common law claims against defendant S & T.

### III.  CONCLUSION

For the reasons stated above, I shall grant the uncontested motions for summary judgment on behalf of defendants Steco Sales, Inc. and Steco Leasing Incorporated and deny the motions for summary judgment on behalf of defendants Saul Spector and S & T Manufacturing, Inc. Further, I shall dismiss the claims against S & T Manufacturing, Inc. for lack of pendent-party jurisdiction.

jurisdiction over "civil actions on claims against the United States."  The Court concluded that the phrase "claims against the United States"

meant claims "against the United States and no one else."  109 S.Ct. at 2008.